NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMCAST OF NEW JERSEY, LLC, :<br><br>Petitioner, :<br><br>v. :<br><br>IBEW LOCAL 827, :<br><br>Respondent. : | Civil Action No. 12-926 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court upon Comcast of New Jersey, LLC's ("Petitioner" or "Comcast") Petition to Vacate Arbitration Award, filed on February 15, 2012. (Pet., ECF No. 1.) On March 19, 2012, Respondent IBEW Local 827 ("Respondent" or "Union") filed Opposition to the Motion and a Cross-Motion to Confirm the Arbitration Award. (Res. Cross-Mot. to Confirm, ECF No. 6.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth in this Opinion and other good cause shown, Comcast's Petition to Vacate is denied and Respondent's Cross-Motion to Confirm is granted.

## I.    BACKGROUND

    In the present matter, Respondent represents Comcast technicians working out of Comcast's Toms River, New Jersey facility. (Mot. to Vacate 2, ECF No. 2-4.) The Union and Comcast were parties to a collective bargaining agreement, covering the period of March 1, 2006 to January 13, 2009 ("2006-2009 CBA"). (*Id.*) Between December 2008 and October 2009, the

Parties were engaged in extensive negotiations over a new collective bargaining agreement to take effect after the expiration of the 2006-2009 CBA. (*Id.*)  The Parties came to an agreement on October 15, 2009, which resulted in a Memorandum of Agreement ("MOA"). (Pet. ¶¶ 5, 20.)  The MOA incorporated by reference Comcast's Final Comprehensive Company Proposal ("Final Proposal"), dated September 29, 2009.  (Mot. to Vacate 6.)

The present dispute concerns the alleged entitlement of Union employees who had a Broadband Certification ("BBC") to a 5% pay increase.  Specifically, Appendix B of the 2006-2009 CBA included provisions under the following headings: "Wage Rate Schedule," "Wage Increases," "Broadband Certification (BBC) Increase" and "Ratification Bonus."  (2006-2009 CBA 29.)  Appendix B provided that a 5% pay rate increase had been "awarded and added to the contractual rate and has been applied to all subsequent pay rates provided the employee continues to occupy a job classification requiring broadband work."  (*Id.*) The October 15, 2009 MOA incorporated the Company's Final Proposal with certain exceptions.  The introductory text of Paragraph 6 provided, "Replace Appendix B with the following[.]"  (MOA ¶ 6.)  Paragraph 6 contained provisions relating to pay scales and wage increases.  (*Id.*)  While the structure of the wage scale in both the 2006-2009 CBA and the MOA is similar, Paragraph 6 does not include a BBC increase provision. (*Id.*)

In December 2009, the Union filed grievances on behalf of 45 employees against Comcast claiming that the Company withheld an increase in salary for those employees who had a BBC.[1]  (Mot. to Vacate 6-7.)  The Parties were unable to resolve the dispute and the grievance went before an arbitrator on March 11 and August 12, 2011, pursuant to Article 9 of the CBA. (*Id.* at 7.)  Article 9 calls for an arbitrator to "render his decision in writing on the grievance and

---

[1] These 45 separate grievances were later consolidated into one grievance.  (Mot. to Vacate 7.)

2

solely on the meaning and interpretation of the particular provision of the contract which gave rise to the dispute." (2006-2009 CBA Art. 9 § 5.) "As this was a non-disciplinary matter, the Union bore the burden of establishing a violation of the [P]arties' contract and, as is custom, presented its evidence first." (Mot. to Vacate 7.)

At the arbitration hearing, the Parties focused on the meaning of the phrase "Replace Appendix B with the following." (Arb. Award, ECF No 1-1.) Comcast argued that the word "replace" in the MOA was clear on its face and the replace language could only mean that paragraph 6 of the MOA was to replace Appendix B of the CBA in its entirety. (Arb. Award 15.) The Union, on the other hand, argued that Appendix B, relating to the BBC increase, was not replaced by the Parties' MOA. (Res. Cross-Mot. to Confirm 2.) On November 17, 2011, the Arbitrator issued an Opinion and Award, and concluded "that the Company violated the [CBA], as modified by the MOA, by failing to implement the negotiated wage increases for employees with broadband certification." (*Id.* at 3.)

On February 15, 2012, Comcast filed the present Petition to Vacate the Arbitration Award claiming that the award does not "draw its essence" from the Parties' Written Agreement. (Mot. to Vacate 12.) Comcast contends that the Arbitrator "ignored the admitted plain, clear and express language of the collective bargaining agreement" when he came to the decision that the phrase "Replace Appendix B with the following" was ambiguous. (*Id.*) The Union subsequently filed a Cross-Motion to Confirm the Arbitration Award on March 19, 2012. (Res. Cross-Mot. to Confirm.) The Union contends that the Court's scope of review of an arbitration award is extremely narrow and that if the Court were to vacate the award, it would go beyond this established standard. (*Id.* at 16.)

3

## II.   STANDARD OF REVIEW

Pursuant to "the Federal Arbitration Act, a district court may vacate an arbitration award if, *inter alia*, 'the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.' In other words, an arbitrator may not venture beyond the bounds of his or her authority." *Matteson v. Ryder Sys., Inc.*, 99 F.3d 108, 112 (3d Cir. 1996) (quoting 9 U.S.C. § 10(a)(4)); *see also United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597-98 (1960).)

Additionally, when a collective bargaining agreement includes an arbitration clause, "it is assumed that the parties bargained for a grievance resolution procedure in which an arbitrator would interpret the agreement. It is thus not the role of a court to correct factual or legal errors made by an arbitrator." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 240 (3d Cir. 2005) (citing *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004)). Further, the validity of an arbitration award is subject to an attack only on the grounds listed in 9 U.S.C. § 10, or if enforcement of the award is contrary to public policy. *Brentwood Med. Assocs.*, 396 F.3d at 241 (citing *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993)). 9 U.S.C. § 10 states, in relevant part:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . ., or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced, or; (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Accordingly, a court's review is exceedingly narrow and a district court should only determine whether an arbitrator's award "draws its essence from the parties' collective bargaining

4

agreement." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *Steelworkers of Am.*, 363 U.S. at 597).

"An award draws its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Brentwood Med. Assocs.*, 396 F.3d at 241 (citing *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379-80 (3d Cir. 1995)). If the Court finds that an arbitrator's award does not draw its essence from a collective bargaining agreement, then the award must be vacated. *Id.*; *see also Citgo Asphalt Ref. Co. v. Paper, Allied-Indus. Chem. & Energy Workers Int'l Local No. 2-991*, 385 F.3d 809, 815 (3d Cir. 2004); *Pa. Power Co. v. Local Union No. 272 Int'l Bhd. of Elec. Workers*, 276 F.3d 174, 178 (3d Cir. 2001). However, "'[a] court may not overrule an arbitrator simply because it disagrees with the arbitrator's construction of the contract . . . or because it believes its interpretation of the contract is better than that of the arbitrator.'" *United Transp. Union Local 1589*, 51 F.3d at 379 (quoting *News Am. Publ'ns, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990)).

Last, the Court must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement. *Exxon Shipping Co.*, 993 F.2d at 360. In order for a court to vacate an arbitration award, "there must be absolutely no support at all in the record justifying the arbitrator's determinations." *United Transp. Union Local 1589*, 51 F.3d at 379 (quoting *News Am. Publ'ns, Inc.*, 918 F.2d at 24). Furthermore, "'[f]requent judicial disapproval of the awards of labor arbitrators would tend to undermine a system of private ordering that is of the highest importance to the well-being of employer and

5

worker alike.'" *Id.* at 380 (quoting *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir. 1986)).

### III.  DISCUSSION

Comcast argues that the Arbitrator exceeded the authority given to him under Article 9 of the CBA by reading the BBC provision into the new Collective Bargaining Agreement. (Mot. to Vacate 22.) Comcast focuses heavily on its claim that the phrase "Replace Appendix B with the following" is, on its face, clear and unambiguous and that the Arbitrator's interpretation "inserted unbargained for limitations on that term by holding that the MOA only replaced a portion of Appendix B . . . ." (*Id.*) Comcast maintains that there is no such limiting language in the MOA, the CBA, or any other document between the Parties. (*Id.*) Comcast further contends that the Arbitrator's interpretation of the language in the MOA actually modified the MOA in a way that was not the intent of either of the Parties. (*Id.* at 22-23.)

Comcast relies on *Swepco Tube LLC v. Local 427, IUE-CWA* to support its argument that the Arbitrator in the present matter exceeded his authority under the CBA. No. 07-0767 (PGS), 2008 WL 746670, at *7 (D.N.J. Mar. 18, 2008). Comcast argues that in *Swepco*, the Court vacated the arbitration award because the Court found that the arbitrator acted beyond his scope of authority and misconstrued contractual principles.  Comcast further argues that in *Swepco*, the court relied on the "plain meaning rule," which prohibits attempts to modify the plain meaning of a contract's words, "under the guise of interpretation." (Motion to Vacate 13) (citing *Swepco*, 2008 WL 746670, at *4). Comcast argues that this standard should be used in the present matter, and since "Replace Appendix B with the following" is clear and unambiguous, the Arbitrator exceeded his authority by not following the language in the MOA. *Id.*

6

In contrast, the Union contends that the Arbitrator "was authorized to fashion a remedy should the grievance be sustained" and that the remedy he fashioned did not "modify the [P]arties' agreement in violation of Article 9, but rather fully adhere[d] to the limitations on his arbitrable authority." (Res. Cross-Mot. to Confirm 36-37.) The Union further argues that the Arbitrator's "meticulous review of the bargaining history and witness testimony resulted in a remedy derived solely from the essence of the [P]arties' CBA and MOA." (*Id.* at 38.) The Union contends that the Arbitrator "found that the Final Comprehensive Company Proposal attached to the [MOA], Item Number 6, represented an ambiguous contractual obligation, and was not . . . a clear, express, sacrosanct term mandating a blind adherence to a dictionary definition of the word replace." (*Id.* at 24.) The Union further asserts that Comcast's "proposal only concerned the fixed wage scale, and [Comcast's] now stated intention to eliminate the Broadband Increase from the previous two (2) Contracts was never discussed by [Comcast]." (*Id.* at 28.) The Union argues that while Comcast was able to clearly articulate when a provision was eliminated, which was "the core element of [the Arbitrator's] decision," it "failed to expressly state its intention to eliminate the BBC Increase" in the new CBA. (*Id.* at 23, 29.)

As set forth in Article 9, Section 3 of the 2006-2009 CBA, "[t]he selection of an arbitrator will be made pursuant to 29 C.F.R. 1404.12 (July 1, 1978).[2] Article 9, Section 5 clearly defines an arbitrator's authority when resolving grievances filed by the Union. It provides that "[t]he arbitrator shall render his decision in writing on the grievance and solely on the meaning and interpretation of the particular provision of the contract which gave rise to the dispute." (2006-2009 CBA Art. 9 ¶ 5.) Article 9, Section 6 limits the arbitrator's power so that

---

[2] 29 C.F.R. 1404.12 sets forth a comprehensive selection process for parties to follow when choosing an arbitrator.

7

"there shall be no power to add to, subtract from or modify this Agreement." (2006-2009 CBA Art. 9 ¶ 6.) The Court finds Comcast's argument that the Arbitrator in this matter exceeded the powers given to him under Article 9 of the CBA unpersuasive. Comcast relies heavily on the reasoning in *Swepco* to support its position. However, the Court is unpersuaded by Comcast's argument that this matter is factually analogous to *Swepco*.

In *Swepco*, the court found that the language at issue was clear and unambiguous, and therefore it was not within the purview of the arbitrator to construe the language in the contract. However, in the present matter, this was the precise issue decided by the Arbitrator. According to the Arbitration Opinion and Award issued on November 11, 2009, the Arbitrator determined the following issues:[3] "1. Did the Company violate the 2006-2009 Collective Bargaining Agreement, as modified by the parties' October 15, 2009 Memorandum of Agreement, by failing to implement the negotiated wage increases for employees with broadband certification? 2. If so, what shall be the remedy?" (Arb. Award 2.) In order to determine if there was a violation of the CBA, the Arbitrator needed to interpret both the CBA and the MOA. Upon doing so, he came to the conclusion that the phrase "Replace Appendix B with the following" did not remove the language relating to the BBC Increase. (Arb. Award 16-23.)

The Arbitrator in the present matter permitted the Parties to brief the issues and conducted a two day hearing. The Arbitrator then issued a thorough and comprehensive Opinion, which reflected a careful consideration of the evidence and witness testimony. The Court shall mention just a few of the Arbitrator's findings that demonstrate the Arbitrator's meticulous review of the record. According to the Arbitration Opinion and Award, Comcast

---

[3] The Parties were unable to agree on the issues for the Arbitrator to decide. Thus, they authorized the Arbitrator to "frame the issues after reviewing the record and hearing arguments of counsel." (Arb. Award 2.)

8

transmitted by email a draft of the new "Collective Bargaining Agreement, which purported to represent the 2006-2009 [CBA] as modified by the MOA." (Arb. Award 11.) "At the end of Appendix B was the [BBC] Increase provision, retained from Appendix B of the 2006-2009 [CBA]." (*Id.* at 12.) Comcast stated that the inclusion of the BBC Increase provision was a mistake, and later transmitted to the Union a "corrected" version of the CBA without the BBC Increase provision. (*Id.*) The Arbitrator also found that when Comcast began calculating the "new" rates as it interpreted the rates under the CBA, it "realized that the BBC employees, who made up 64% of the bargaining unit, would be paid less under the MOA, as interpreted by [Comcast], than they were then receiving, including the BBC Increase." (*Id.*) Thus, the Arbitrator found that "under [Comcast's] interpretation of the MOA, BBC employees would be paid about 0.5% less than what they were paid before the MOA was to be implemented." (*Id.*) The Arbitrator further found that Comcast subsequently changed how it calculated the rate by adding "the 2.3% increase to their last rate: which was the 2008 rate plus their BBC Increase." (*Id.*)

The Court finds that while the Arbitrator did not have the authority to modify the MOA, he was called upon to determine whether the Parties intended to eliminate the BBC Increase provision from the CBA. In his decision, the Arbitrator reasoned that, based on the structure of the MOA, the word "replace" "under no circumstances means literally 'replace.'" (Arb. Award 17.) The Arbitrator stated that "[o]n its face, what follows in paragraph 6 is not language fit to be inserted into a collective bargaining agreement. Rather, it is a rough outline of what was to be included in the new Appendix B, with much additional clarification and reorganization required." (*Id.*) Additionally, the Arbitrator cited four (4) examples of language in the MOA

9

that used more specific language when removing language from the 2006-2009 CBA.[4]  (*Id.* at 17-18.)

In light of the Court's exceedingly narrow review of an arbitrator's award, the Court finds that the Arbitrator's Award in this matter is significantly supported by his careful review of the Parties' bargaining history, documents submitted to him by the Parties, and the oral testimony of the witnesses during the arbitration hearing.  The Arbitrator's consideration of the entire record, including but not limited to the use of language in other sections of the MOA, demonstrates the clear reasoning in the Arbitrator's decision.  Further, the Arbitrator's reasoning shows how the interpretation can rationally be derived from the agreement when considering all of the language of the MOA and its context.  As such, the Court does not find good cause to vacate the Arbitrator's decision.[5]

---

[4] Three of the four examples cited by the Arbitrator use the language "eliminate existing paragraph in its entirety and substitute the following."  (Arb. Award 17.)  Comcast argues that the phrase "Replace Appendix B with the following" was to be interpreted in the same manner.  However, Comcast chose not to use the more specific language as in the previous paragraphs.  (Arb. Award 17-18.)

[5] Comcast also argues that the Arbitrator's Opinion unfairly placed an affirmative duty on Comcast to ensure that the Union understood the terms of the MOA, but still maintains that "[b]y giving the Union a proposal on September 29, 2009 that states, 'Replace Appendix B with the following', the Company did clearly signal its intent – to replace Appendix B with the words that followed."  (Mot. to Vacate 19-20.)  The Union argues that "the 'implied obligation' argument is compelling and the Third Circuit has not only found that implied terms include wages, but that an entire collective bargaining agreement may be construed as an 'implied obligation' on an employer. . . ."  (Res.' Reply Br. 4, ECF No. 12.)  The Court does not find it necessary to analyze the arguments regarding an "affirmative duty."  In the present case, the Arbitrator's award draws its essence from the Parties' CBA and the Arbitrator did not exceed his power.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Petitioner's Motion to Vacate the Arbitration Award is denied and Respondent's Cross-Motion to Confirm the Arbitration Award is granted.

_____s/ Michael A. Shipp_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

<u>Dated:</u> January 31, 2013

11